# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO: 3:04CV607

| | |
|---|---|
| **BRENDA J. HANKINS** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| **SOCIAL SECURITY ADMINISTRATION,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion for Summary Judgment and Motion to Expand the Record" (Document No. 11) and "Plaintiff's Memorandum in Support of Motion for Summary Judgment and Motion to Expand the Record" (Document No. 12), filed May 16, 2005, and the "Motion for Summary Judgment (Document No. 15) and "Memorandum in Support of the Commissioner's Decision" (Document No. 16), filed July 21, 2005 by the Commissioner of the Social Security Administration ("Defendant"). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that the "Plaintiff's Motion for Summary Judgment..." be <u>denied</u>; that Defendant's "Motion for Summary Judgment" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. PROCEDURAL HISTORY

On April 11, 1994, Brenda J. Hankins ("Plaintiff") applied for a period of disability and disability insurance benefits, alleging that she became disabled on November 25, 1992 as a result

of "severe" status post carpal tunnel release and reflex sympathetic dystrophy. The Social Security Administration denied Plaintiff's claims initially in June 1994 and on reconsideration in August 1994. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 25, 1995. On October 26, 1995, the ALJ, Judge D. Kevin Dugan, issued an opinion finding that Plaintiff was not disabled during the relevant time period.

Subsequently, Plaintiff filed a timely Request for Review of Hearing Decision. On October 18, 1996, the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. This Court then entered a Consent Order on May 20, 1998 remanding Plaintiff's claim to the Commissioner for further consideration. On July 30, 1998 the Appeals Council entered an Order vacating the final decision of the Commissioner and remanding the case to an Administrative Law Judge for further proceedings.

On March 4, 1999, after a second hearing, Judge Dugan again denied Plaintiff's claims. On June 10, 2000, the Appeals Council again remanded these claims to an ALJ. On November 27, 2000, after a third hearing, Administrative Law Judge Saul W. Nathanson also found that Plaintiff was not under a "disability" as defined by the Social Security Act. The Appeals Council denied review on October 4, 2004, making the hearing decision the final decision of the Commissioner.

Plaintiff filed this action on December 8, 2004, and the parties' cross-motions for summary judgment are now ripe for the Court's consideration.

## II.  STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether

the Commissioner applied the correct legal standards.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th

Cir. 1990); see also  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam).  The district

court does not review a final decision of the Commissioner de novo.  Smith v .Schweiker, 795 F.2d

343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson,

483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if

supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  In Smith v. Heckler,

782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the

Fourth Circuit defined "substantial evidence" as:

> being "more than a scintilla and do[ing] more than creat[ing] a
> suspicion of the existence of a fact to be established.  It means such
> relevant evidence as a reasonable mind might accept as adequate to
> support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the

responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical

evidence, and that it is the claimant who bears the risk of nonpersuasion").

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence

or to substitute its judgment for that of the Commissioner – so long as that decision is supported by

substantial evidence.  Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345;

and Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).  Indeed, so long as the

Commissioner's decision is supported by substantial evidence, it must be affirmed even if the

reviewing court disagrees with the final outcome.  Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir.

1982).

### III.  DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff was "disabled" as that term of art is defined for Social Security purposes and thus entitled to a period of disability and disability insurance.[1]  The ALJ considered the evidence and concluded in his written opinion that Plaintiff has not engaged in substantial gainful activity since her alleged date of disability onset; that Plaintiff has "severe" status post carpal tunnel release and reflex sympathetic dystrophy, but that no impairment or combination of impairments meets or medically equals one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; that Plaintiff was a "younger individual" at the date of her alleged disability onset and is "approaching advanced age" beginning in September 1999; that she has a high school education; that Plaintiff's situational depression causes mild limitations in activities of daily living, no limitations in social functioning, and mild limitations in concentration, persistence, or pace; that Plaintiff retains the residual function capacity to perform "light" and "sedentary" work which requires only diminished use of the dominant upper extremity; that Plaintiff is not able to perform her past relevant work; but that, Plaintiff could perform work which exists in significant numbers in the national economy.  Accordingly, the ALJ concluded that Plaintiff was not under a disability as defined for Social Security purposes.

Plaintiff contends on appeal that the ALJ erred in his evaluation and that the Commissioner

---

[1]  Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months
> ....

Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

failed to meet her burden of proof. Specifically, Plaintiff contends that (1) the ALJ erred in assessing

Plaintiff's residual functional capacity; (2) the ALJ failed to properly assess Plaintiff's credibility;

and (3) the ALJ failed to elicit credible testimony from a vocational expert. Plaintiff also contends

that the Court should expand the Record.

The undersigned concludes, however, that the ALJ's assessments of Plaintiff's subjective

complaints were proper. The undersigned further concludes that substantial evidence supports the

ALJ's findings regarding Plaintiff's residual functional capacity and her ability to perform "light"

and "sedentary" work, as well as the ultimate conclusion that Plaintiff was not disabled as defined

for Social Security purposes.

### A.  Residual Functional Capacity

The Social Security Regulations define "residual functional capacity" as "the most [a

claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a). The Commissioner is

required to "first assess the nature and extent of [the claimant's] physical limitations and then

determine [the claimant's] residual functional capacity for work activity on a regular and continuing

basis." 20 C.F.R. § 404.1545(b). The residual functional capacity ("RFC") assessment is based on

all the relevant evidence, including observations by treating or examining physicians. 20 C.F.R. §

404.1545(a).

Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC. In challenging the ALJ's

assessment of her RFC, Plaintiff contends that the ALJ erred by not including Plaintiff's depression

in the list of the Plaintiff's severe impairments. Defendant contends that after careful review of the

evidence, the ALJ found that Plaintiff's depression was not a severe impairment. The ALJ

determined that Plaintiff's "symptoms of depression do not interfere with her ability to understand,

carry out, and remember simple instructions, use judgment, respond appropriately to supervisors, co-workers, and usual work situations, or deal with changes in a routine work setting." The ALJ's determination cited, and is consistent with, 20 C.F.R. § 404.1521(b) which identifies basic work activities that indicate non-severe impairment.

Plaintiff argues that the ALJ "essentially ignored Mrs. Hankin's extensive mental health treatment." However, the ALJ opinion indicates that the Judge thoroughly reviewed exhibits and relevant information relating to Plaintiff's mental health history, including observations by treating or examining physicians. As to the ALJ's failure to consider mental health treatment records covering January 7, 1999 through November 9, 2000, the Defendant presents a persuasive rebuttal.

First, Defendant argues that these specific mental health records were not properly presented even though the ALJ on September 27, 2000 agreed to keep the administrative record open for two weeks for Plaintiff to submit these additional records. Plaintiff finally submitted these additional mental health records on November 28 2000, *after* the ALJ's November 27, 2000 decision and the closing of the Administrative Record. The Appeal Council later considered the additional evidence but found no basis for changing the hearing decision or assuming jurisdiction of the case.

Second, Defendant effectively rebuts Plaintiff's argument that this Court should remand to the ALJ to consider this evidence by explaining that the evidence is not new or material and that there is no good cause for Plaintiff's failure to have timely incorporated this evidence in the record as required under 42 U.S.C. § 405(g).

Next, Plaintiff criticizes the "little weight" given to the opinion of Plaintiff's therapist, Ms. Lowery, a certified social worker, who Plaintiff claims had "treated Mrs. Hankins extensively, as far back as at least 1978." As an initial matter, Plaintiff's argument seems to be at least partially based

on false information; Ms. Lowery's report dated April 12, 1995 states in pertinent part "[t]his was

her first appointment with me, being transferred recently from Stephen Pancoast on the intake team."

Ms. Lowery began working with Plaintiff in 1995, not 1978.

Furthermore, it is the view of the undersigned that the ALJ's opinion provided adequate

support for the weight he placed on Ms. Lowery's opinion. Specifically, the ALJ opined:

> In assessing the Claimant's symptoms of depression, I have given
> little weight to the opinion of the claimant's therapist in 1995 that she
> was unable to work because of severe limitations in her ability to
> tolerate work pressures due to her physical impairments and resulting
> depression because it is inconsistent with the other evidence in the
> file, including the therapy records, and appears to be based in part on
> the claimant's physical problems which Ms. Lowery is not qualified
> to assess. I note that the claimant was working at the time this
> opinion was written and her therapist did not discourage her from
> working, except when she reported physical problems such as
> difficulty lifting children while babysitting. The therapy records
> show that claimant's symptoms of depression were aggravated by
> financial and family stressors and that Ms. Lowery gave her
> encouragement and advice on how to improve her situation.

The ALJ gave more weight to the opinion of Dr. Britt, a consultative psychologist, who

characterized the Plaintiff's "ability to understand, remember, and carry out job instructions as

unlimited and her ability to make work adjustments as fair to good." Plaintiff argues that Dr. Britt's

opinion should have been given less weight because his report stated that there were no medical

records that Plaintiff had been followed psychiatrically on a regular basis between March 1995 and

December 1998. As Defendant counters, this statement by Dr. Britt is not inaccurate because

Plaintiff was not followed *psychiatrically* - she was followed by a clinical social worker. Plaintiff

fails to provide adequate reasoning that the ALJ relied on inaccurate or incomplete evidence of

Plaintiff's depression.

Finally, Plaintiff faults the ALJ for not considering the combined effect of Plaintiff's

impairments. However, in the paragraph immediately following the ALJ's assessment of Plaintiff's

depression, he unequivocally states, "the claimant has not established an impairment, *or combination*

*of impairments*, which meets or is medically equal to any of the Listing of Impairments in Appendix

1, Subpart P of Social Security Regulation No. 4." (Emphasis added). Defendant's brief cites

persuasive authority on this point "[a]n ALJ's finding that multiple impairments do not render a

claimant disabled will be upheld unless the ALJ 'so fragmentized [sic] [Plaintiff's] several ailments

that he failed properly to evaluate their effect in combination upon [Plaintiff].'" Owens v. Heckler,

770 F.2d 1276, 1282 (5ᵗʰ Cir. 1985), quoting Dillon v. Celebrezze, 345 F.2d 753, 757 (4ᵗʰ Cir. 1965).

The ALJ also stated that "[h]aving carefully reviewed *all of the evidence* in this case, I find that the

claimant retains the residual functional capacity to perform "light" and "sedentary" work....."

(Emphasis added).

Plaintiff does not provide sufficient support for its contention that the ALJ failed to consider

the impairments in combination. It is the undersigned's view that the ALJ relied on substantial

evidence in assessing Plaintiff's residual functional capacity and that his findings should not be

disturbed.

### B. Plaintiff's Credibility

Next, Plaintiff contends that the ALJ's assessment of Plaintiff's credibility was improper.

The ALJ determined that Plaintiff's testimony and subjective complaints were not reliable. First,

the ALJ opined that Plaintiff's testimony as to her pain was not credible in view of her daily

activities and inconsistencies in the record. Specifically, the ALJ cited Plaintiff's extensive activities

involving child care and household chores. In addition, the ALJ noted that Plaintiff testified that she

did not take her medication as directed; that her testimony and complaints of pain appeared

exaggerated when compared to the findings of numerous physical examinations and other medical evidence; that she testified she had memory problems although Dr. Britt found that her memory was normal. Because he found her testimony and subjective complaints lacked credibility, the ALJ gave the most weight to Plaintiff's treatment records.

Plaintiff's brief suggests that the ALJ decision put too much emphasis on Plaintiff's social activities and that his opinion implies that a person who engages in recreational activities cannot be disabled. Plaintiff also argues that the ALJ's finding of a severe physical impairment that could cause pain was inconsistent with a finding that Plaintiff's testimony was exaggerated. The undersigned disagrees and instead views the ALJ's assessment of the evidence as thorough and the weight placed on particular types of evidence as appropriate and proportional. It is not necessarily inconsistent that someone could be in pain and still exaggerate the extent of their pain or their inability to function. In fact, the Fourth Circuit has found that "[p]ain is not disabling per se," and that "disability requires more than the mere inability to work without pain." Ferrante v. Bowen, 869 F.2d 593 (4th Cir. 1989) quoting Dumas v. Schweiker, 712 F.2d 1545, 1552 (2nd Cir. 1983).

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R.§ 416.929(b), § 404.1529(b); 42 U.S.C. § 423(d)(5)(A)). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects his ability to work." Id. at 595 (citing 20 C.F.R. § 416.929(c)(1), § 404.1529(c)(1)). The regulations provide that this evaluation must take

into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (citations omitted).

An ALJ is responsible for making credibility determinations and resolving conflicts in evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Furthermore, an ALJ is accorded deference as to determinations of a claimant's credibility. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). In this case, the ALJ gave specific reasons supported by substantial evidence in the record for his findings on credibility.

## C. **Testimony of Vocational Expert**

Plaintiff also argues that testimony of the vocational expert did not reflect all of the Plaintiff's non-exertional impairments and did not support the ALJ's finding that there are jobs in the national economy which she could perform.

Defendant first responds by arguing that the ALJ, as discussed above, excluded Plaintiff's alleged depression from his RFC assessment, and concluded that Plaintiff's pain was not disabling The ALJ accounted for any pain restrictions by reducing her RFC to light and sedentary work requiring restricted use of her right arm. Defendant contends that the ALJ's hypothetical question was proper considering the Appeals Council's June 10, 2003 Order requiring it to state "all claimant's exertional and nonexertional limitations *found supported by the evidence*." (Emphasis added.). As explained above, the ALJ had considered Plaintiff's pain and depression and had not

found substantial evidence to support Plaintiff's claim that these non-exertional impairments were disabling.

Next, Plaintiff contends that the vocational expert's testimony was not responsive to the limitations in the hypothetical question. Specifically, Plaintiff is critical of the expert's response listing jobs that require "frequent" use of the hands despite the limitation imposed by the hypothetical question of "diminished use of the right, dominant ... upper extremity ...."

Defendant responds to this claim by making the point that limitations in one arm do not automatically preclude jobs requiring reaching, handling, or fingering with the non-dominant hand. Defendant contends that it is well established that work exists at the light exertional level for those who have lost part of an upper extremity due to amputation.

On this subject, the ALJ stated "[e]ven if the claimant cannot perform all 'light' jobs, I am convinced by the credible testimony of the vocational expert that there are jobs she could perform consistent with her impairment ... and I find they exist in significant numbers in the national economy."

The undersigned is satisfied that the ALJ adhered to the instructions of the Appeal's Council in his questioning of the vocational expert and that the expert's response is not inconsistent with the evidence or the ALJ's other findings.

### D. Expansion of the Record

Finally, the Plaintiff moves the Court to expand the Record to include Exhibits 43 through 55 (Attachments A - M), as well as their Attachments N and O. Plaintiff concedes that it appears the ALJ had a complete record containing Exhibits 43 through 55, "inasmuch as he refers to Exhibits 50-56." Attachment N includes Plaintiff's July 2, 2001 second set of exceptions to the Appeals

Council and facsimile confirmation, and Attachment O includes psychiatric records covering January 7, 1999 through November 9, 2000.

Defendant contends that since the filing of Plaintiff's brief the Commissioner supplemented the administrative record to include Attachments A - M and O. Defendant does not object to the inclusion of Attachment N, Plaintiff's second set of exceptions to the Appeals Council, but argues that it does not present any arguments not present in Plaintiff's brief and that it has no bearing on the ALJ's final decision.

The undersigned has reviewed the documents in question and concurs with Defendant's assessment of this information. All but Attachment N are part of the administrative record and N is well-represented by Plaintiff's brief. Therefore, the Plaintiff's motion to expand the Record should be denied.

In conclusion, although the Record establishes that Plaintiff experienced physical pain as well as some mental difficulties, including depression, it is the ALJ's responsibility, not the Court's "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the evidence cited by the ALJ supports the ultimate finding that Plaintiff suffered from, but was not disabled from working, by an impairment or combination of impairments. In this case, substantial evidence supports the ALJ's determinations.

## V. RECOMMENDATIONS

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (Document No. 11), filed be **DENIED**; that Defendant's "Motion for Summary Judgment (Document No. 15), be **GRANTED**; and that the Commissioner's determination is **AFFIRMED**.

## VI.  NOTICE OF APPEAL OF RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within (10) days after service of same.  Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v .Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp.101, 102 (W.D.N.C. 1990).  Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365.  Moreover, failure to file timely objections will also preclude the parties from raising objections on appeal.  Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v . Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Graham Mullen.

**SO RECOMMENDED AND ORDERED**.

Signed: April 20, 2007

David C. Keesler
United States Magistrate Judge

13